CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
NOV 30 2007
JOHN F. CORCORAN, CLERK
BY: /s/ S. Bugg
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LYRISSA C. LAWSON, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> MICHAEL ASTRUE ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant ) | Civil Action No. 7:06cv747 <br><br> Hon. Michael F. Urbanski <br> United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Lyrissa C. Lawson ("Lawson") brings this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security ("Commissioner") denying Lawson's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B ). Following the filing of the administrative record and briefing, oral argument was held on October 30, 2007. As such, the case is now ripe for decision. The undersigned recommends that this case be remanded as the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence.

Remand is appropriate in this case for two reasons. First, the case must be remanded under sentence four of 42 U.S.C. § 405(g) for consideration of Lawson's anxiety, depression, and bipolar disorder as a severe impairment under the regulations. This consideration should include, under sentence six of 42 U.S.C. § 405(g), new medical evidence submitted to the Appeals Council. Second, the Commissioner should undertake a complete vocational assessment at step

five of the sequential evaluation process taking into consideration all of Lawson's severe impairments. See 20 C.F.R. § 404.1520(a)(4)(v).

## I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. § 404.1520; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the

2

five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Lawson initially claimed disability based on physical impairments following a fall she sustained while delivering newspapers on September 26, 2002. In that fall, Lawson fell on her left hip and elbow and neither hit her head nor lost consciousness. It is plain from her subsequent medical treatment and history that there is no issue on her claimed physical disability. While Lawson complains of low back pain, there are no objective or clinical manifestations of any physical injury resulting from this fall and her treating orthopedist, Dr. Stephenson, states that Lawson has no disabling condition that would prevent her from working. This was confirmed in a medical consultative evaluation done on June 21, 2004 by Dr. Silvestro Lijoi, who stated that "I am in full agreement with Dr. Stevenson's evaluation. I do not find any physical abnormalities that would significantly impact this claimant in finding employment." (R. 222) Indeed, none of Lawson's treating physicians suggest that she is physically incapable of working, and Lawson makes no argument on appeal as regards her claimed physical disability.[1]

---

[1] Likewise, two state agency physicians opined that Lawson was physically able to perform work. (R. 253-260).

The issue on this appeal, therefore, turns on her claimed non-exertional impairments. Specifically, Lawson now claims that she is disabled by depressive and anxiety disorders. The ALJ found Lawson's mental impairments not to be severe at step two of the sequential evaluation process, noting as follows:

> Claimant has been diagnosed with depressive and anxiety disorders, but there is no evidence that she has ever sought treatment from a mental health professional and the treating family nurse practitioner has indicated that anxiety can be managed with medication with follow-up at three-month intervals. Notably, reviewing psychologists at the initial and reconsideration levels found that claimant does not find a "severe" mental impairment documented in the record.

(R. 22)

The threshold for establishing a severe impairment at step two is well-established in the Fourth Circuit. In this Circuit, "an impairment can be considered "not severe" only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Lawson's medical records reflect that she complained for some years to her treating physicians of persistent migraines, anxiety and depression, and did so even before her fall and while she was working. As early as October 1, 2001, while she was still working, Lawson complained to her treating primary care physician, Dr. Kaatz, about anxiety and depression, and ultimately was diagnosed with a bipolar disorder. (R. 174-91) Dr. Kaatz first diagnosed "[a]cute anxiety state, which seems to be more consistent with generalized anxiety," and prescribed

4

Paxil.[2] (R. 191) Two months later, Dr. Kaatz upgraded Lawson's diagnosis to "generalized anxiety disorder." (R. 190) In February 2002, Lawson was seen for persistent migraines with "jaw tightness, tingling and numbness, as well as slurred speech." (R. 189) At that time, Lawson reported some improvement in her anxiety level, but had not achieved baseline. Three weeks later, on March 15, 2002, Lawson reported that she had not had any migraines, "but she has been emotionally labile, extremely anxious, has had severe insomnia, feelings of depression." (R. 186) Dr. Kaatz's examination notes state that "[s]he was emotionally labile during the exam and cried many times." (R. 186) Dr. Kaatz diagnosed Lawson with "[m]ajor depression with anxiety features" and increased Lawson's Paxil dose. (R. 185) In May 2002, Lawson contacted Dr. Kaatz' office and was reportedly "completely hysterical," after not taking the Paxil for six days and experiencing truancy issues with her daughter. A few days later, Lawson appeared "more settled" and "was making sense with most of what she told me today with the exception of some ramblings about headaches and another family member that occur at the same time as hers." (R. 183) Dr. Kaatz noted that Lawson was "[o]verall much improved from my last discussion with her on the phone Friday. At that time she was not overtly suicidal or homicidal, but was making wild accusations about the school district and principal." (R. 183) After this visit, Dr. Kaatz noted that he was "very suspicious of bipolar disorder." (R. 183) Dr. Kaatz prescribed restarting her Paxil, re-prescribed Valium and added Zyprexa[3] along with a medication for her migraines. Two weeks later, Dr. Kaatz noted great response to the Zyprexa,

---

[2]Paxil is the brand name for a medication, Paroxetine HCL, which is used to treat depression, panic disorder and social anxiety disorder.

[3]Zyprexa (olanzapine) is used in the treatment of schizophrenia and bipolar disorder.

5

indicating "[s]he is still somewhat emotionally labile and is very agitated at times but those symptoms seem to be steadily improving." (R. 182) On June 25, 2002, Dr. Kaatz noted that "[s]he is doing much better but is still somewhat on the manic side. . . . She was a little bit disheveled this AM and looks a bit pale and is still flighty and somewhat pressured in speech. No other psychiatric features were noted." (R. 181) Dr. Kaatz' assessment was of bipolar disorder somewhat manic.

Throughout this treatment, Lawson was apparently working, but stopped after she slipped and fell on September 26, 2002 while delivering newspapers at a convenience store in Wytheville. Dr. Kaatz' note from an office visit on October 2, 2002 described her physical ailment as "[l]eft buttock contusion, previously diagnosed with apparent sciatica." (R. 177) On October 16, 2002, Dr. Kaatz noted that Lawson may return to work. (R. 196-97) Dr. Kaatz last saw Lawson on May 8, 2003, at which time she complained of persistent migraines almost on a daily basis, as well as severe anxiety. "She has been very anxious and dysfunctional and is currently not working." (R. 174)

At this point, Lawson had a falling out with Dr. Kaatz who did not treat her further. Apparently, Lawson disagreed with Dr. Kaatz' decision to discontinue her pain medication, Vioxx, which Lawson felt was helping her pain a great deal. It is not clear, however, just who initiated the end of the treatment relationship with Dr. Kaatz. The notes of the orthopedist indicate that Lawson was upset about the discontinuation of Vioxx and the diagnosis of bipolar disorder, which she disputed. (R. 233) Later notes from the consultative psychologist indicate that Lawson told her that Dr. Kaatz refused to see her because she threatened to kill him over a change in medication. (R. 282)

Dr. Lijoi's June 2004 consultative evaluation of Lawson also addressed her mental state, but in this regard Dr. Lijoi's evaluation serves to raise more questions than it answers. In particular, Dr. Lijoi's psychiatric assessment stated that "[t]he patient appears to have symptom magnifying with no apparent anxiety or panic attack but questionably delusional and apparently depressed. She has a positive review of symptoms which may be indicative of further psychiatric difficulties." (R. 222) Dr. Lijoi concluded that "I feel based on her history and questionable psychiatric basis, that she may need to be fully worked up in order to make a better decision, which should be based on a psychiatric basis or need, and with hopes that this is not an organically-derived syndrome." (R. 223)

In this regard, it appears that Dr. Lijoi did not have access to a neurological evaluation done on Lawson a few months earlier, in April 2004, by Dr. Steven D. Nack, a physician board certified in psychiatry and neurology. Dr. Nack termed Lawson's history of claimed seizure activity to be "rather elusive," (R. 199), and found her neurological exam to be normal. Dr. Nack expressed some concern about Lawson becoming "analgesic dependent," (R. 201), as regards her low back pain and migraine headaches, and recommended that she "avoid daily analgesics and hopefully begin getting her back to her normal activities." (R. 201).

Dr. Linda Cheek and Nurse Practitioner Mary Ellen Cotellese saw Lawson thereafter for various primary care complaints, including rash, migraine and generalized anxiety disorder. To this point, none of her treating physicians had advised Lawson that she could not work, nor do their clinical notes reflect that she could not work.

State Agency psychologists R.J. Milan and E. Hugh Tenison completed a Psychiatric Review Technique in June and November 2004, respectively, based on a review of Lawson's

medical records. Drs. Milan and Tenison found no severe psychological impairment and only mild functional limitations. (R. 261, 271)

In July and October 2004, Lawson's counsel requested a consultative psychological evaluation, but none was ordered. Thereafter, counsel arranged for Lawson to be evaluated by Licensed Clinical Psychologist Pamela Tessnear. Dr. Tessnear saw Lawson on February 1, 2006, four months after her date last insured.[4]

Lawson's appeal is predicated to a great extent on Dr. Tessnear's one time consultative evaluation of Lawson, but that evaluation is remarkable in that it does not state that Lawson is disabled from all employment. Rather, it concludes, under the category "Functional information" as follows:

> Problems with concentration would make complex and detailed work very challenging for Ms. Lawson, especially if numbers are involved. She is more likely to be successful at simple, repetitive tasks. Work attendance may suffer because of the sleepiness she experiences as a side effect of her medication. She does not require special supervision and is able to accept instruction from supervisors. She is expected to have problems dealing with normal work stress, especially of a social nature. She cannot work with the public and is likely to have difficulty with co-workers. By her report, without medication she is angry and aggressive, but with medication she is fearful and avoidant.

(R. 288)

Further, Dr. Tessnear noted some inconsistencies in the Personality Assessment Inventory ("PAI") which she administered to Lawson, commenting that "[h]er personality testing suggests exaggeration and is not entirely consistent with her interview report." (R. 285, 288)

---

[4]For this DIB claim, Lawson must establish disability onset on or before September 30, 2005 (R. 18).

8

The ALJ gave very little weight to Dr. Tessnear's report, noting as follows:

> It was obtained upon referral by claimant's attorney for the specific purpose of bolstering her claim of a mental condition for her pending Social Security disability claim. The treating physician and nurse practitioner failed to find claimant's mental condition significant enough to refer her to a mental health specialist. The claimant certainly did not try to obtain treatment with a mental health specialist nor did counsel refer her to a treatment center. Instead, counsel hand-picked a psychologist to provide a one-time examination and assessment of the claimant <u>after</u> her date last insured had expired. **The objective testing (PAI) given by Dr. Tessnear "suggests exaggeration and is not entirely consistent with her interview report."**

(R. 23)

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527 (d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p. The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary

9

evidence," and the ALJ must provide her reasons for giving a treating physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). Even though Dr. Tessnear did not have a significant treating relationship with Lawson, she did examine Lawson and her opinion must be considered and appropriately weighed. The undersigned believes that the ALJ's concern about counsel's involvement in the selection and retention of Dr. Tessnear to be overstated and does not find that this rationale, in and of itself, to be a sufficient reason to reject Dr. Tessnear's opinion.

Indeed, the issue is not how the examining psychologist was selected, but rather whether the record establishes the existence of a more than "slight abnormality" having a "minimal effect" on Lawson's ability to work. Evans, 734 F.2d at 1014. Given this relatively low bar that Lawson must surpass to establish a severe impairment under the regulations and Lawson's documented history of depression, anxiety, bipolar disorder and treatment for such issues over a period of years by Dr. Kaatz, the undersigned cannot find that the ALJ's decision that Lawson's mental impairments are not severe to be supported by substantial evidence.[5] As a consequence,

---

[5] Attached to Lawson's brief are two documents post-dating both the ALJ's decision and the date last insured which Lawson's counsel indicates were sent to, but apparently not considered by, the Appeals Council. One document is an initial assessment dated October 30, 2006 by a psychiatrist, Richard P. Leggett, which is remarkable in that it Dr. Leggett describes
(continued...)

this case must be remanded to the Commissioner to complete steps three through five of the sequential evaluation process.[6]

### III.

That is not to say, however, that a finding of disability will result when the remaining steps of the sequential evaluation process are employed. Ultimately, the decision of the Commissioner may well be apt, but that cannot be determined without consideration of Lawson's mental impairments at the later steps in the process, including steps four and five.

In this regard, it appears that the administrative record touches on, but does not complete, the step five analysis. At this step, the Commissioner bears the burden of providing evidence that the claimant can engage in a job that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1), (2) (providing that the Commissioner bears the burden at step five); Wilson v. Heckler, 743 F.2d 218, 220 (4th Cir.1984). Generally, the ALJ obtains such evidence through a vocational expert ("VE"), who, based on the claimant's age, education, work

---

[5](...continued)
Lawson's depression and anxiety as "mild but clinically significant," notes that she has achieved some stabilization, and while pegging her current GAF at 50, states that in the past year it was 72. The second document is an October 30, 2006 letter from Vicki Wells, a Licensed Professional Counselor who saw Lawson beginning in August, 2006. Wells' letter states that "[i]n my clinical opinion, I do not feel that Ms. Lawson is emotionally strong enough to handle working at this time. She is emotionally fragile. She could not handle any more stressors than she currently has." These records also undermine the ALJ's decision that Lawson's mental impairments do not reach the severe level. Indeed, all three mental health professionals who have seen Lawson, a psychiatrist, a psychologist and a licensed professional counselor, deem her depression and anxiety to be, at the very least, "clinically significant." In light of this consistent assessment by the mental health professionals who have seen Lawson, the ALJ's determination that her mental impairments are not "severe" is unsupported by substantial evidence and must be remanded for further assessment at steps three through five.

[6]It does not appear that Lawson's mental impairments rise to the listing level but on remand that determination is for the Commissioner to make.

11

experience, and RFC, testifies as to whether there are jobs for such a person in the national and regional economy. See 20 C.F.R. § 404.1520(g)(1). At the administrative hearing, the VE was asked to evaluate the impairments reported by Dr. Tessnear. Dr. Tessnear's report, while noting some testing inconsistencies and possible exaggeration, concluded that Lawson would have functional "problems with normal work stress, especially of a social nature," and that she "cannot work with the public." (R. 288) When questioned about this testimony, the VE testified that the restriction to no public contact "clearly has her restricted to occupations other than in personal service work." (R. 348) On the issue of problems dealing with co-workers, the VE stated that "I think this person clearly would have problems. I just don't see quite enough to say that any potential occupational base would be entirely abolished." (R. 348) The VE testified that even taking Dr. Tessnear's opinion at face value, there would be jobs a person with Lawson's work stress/social impairments could perform. Nevertheless, the VE's testimony stops there and does not identify any jobs taking into account Lawson's mental impairments.

Taking all of this together, the problem comes when the jobs identified by the VE do not take into account at all the issue of Lawson's documented anxiety and Dr. Tessnear's prohibition against her working with the public. Indeed, all of the jobs identified by the VE at step five involve substantial direct interaction with the public. On remand, the Commissioner should

12

consider Lawson's severe mental impairments in evaluating her claimed disability at steps four and five.

For the foregoing reasons, the undersigned recommends that the case be remanded under sentence four of 42 U.S.C. § 405(g) with instructions that Lawson's anxiety, depression and bipolar disorder be considered as a severe impairment under the regulations and that the remainder of the sequential evaluation process be employed, including, under sentence six, consideration of the new medical evidence submitted to the Appeals Council. Finally, on remand, the Commissioner should undertake a more complete assessment at steps four and five, taking into consideration Lawson's mental impairment.

## IV.

The Clerk is directed immediately to transmit the record in this case to the Hon. Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 30th day of November, 2007

Michael F. Urbanski
United States Magistrate Judge

13